DORSEY & WHITNEY LLP
J. Michael Keyes (SBN 262281)
  keyes.mike@dorsey.com
Connor J. Hansen (*pro hac vice*)
  hansen.connor@dorsey.com
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone: 206.903.8800
Facsimile:  206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  schmidt.kent@dorsey.com
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:   714.800.1499

*Attorneys for Plaintiff AXS Group LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA,

|  |  |
|---|---|
| AXS GROUP LLC, | Case No. 2:24–CV–00377 CAS (EX) |
| Plaintiff, | **EX PARTE APPLICATION FOR AND MEMORANDUM IN SUPPORT OF AN ORDER GRANTING LEAVE FOR EXPEDITED DISCOVERY** |
| v. | |
| INTERNET REFERRAL SERVICES, LLC, EVENT TICKETS CENTER, INC., VERIFIED-TICKET.COM, AMOSA.APP, and SECURE.TICKETS, | |
| Defendants. | |

## *EX PARTE* APPLICATION

Plaintiff AXS Group LLC ("Plaintiff" or "AXS") applies *ex parte* for an Order granting leave for expedited discovery (the "Order").

Defendants operate third-party ticket retail platforms and/or delivery services. Collectively, Defendants market, advertise, sell, display, distribute, and deliver to consumers digital tickets that purport to be authentic AXS digital tickets. In reality, though, some of the supposed "genuine" AXS digital tickets sold and distributed by Defendants are counterfeits. These counterfeit tickets bear Plaintiff's trademarks

-1-

and, on information and belief, were created, in whole or in part by one or more of the Defendants illicitly accessing and then mimicking, emulating, or copying elements of the AXS App, without Plaintiff's permission or consent.

Plaintiff seeks expedited discovery from each Defendant to identify each domain operated by Defendants and used to market, sell, or distribute counterfeit tickets, the sales and customers of each Defendant, communications between the Defendants, and the sources of Defendants' counterfeit tickets. This information is needed to support Plaintiff's pending Motion for Preliminary Injunction.

Further, because Defendant Verified-Ticket.com ("Verified.Ticket"), Defendant Amosa.app ("Amosa"), and Defendant Secure.Tickets, who each sell and/or distribute counterfeit AXS tickets, are associated with no known physical location and have concealed the true identity of their owners, AXS seeks expedited discovery from these Defendants and through Rule 45 subpoenas to third party domain registrars to ascertain the true identities of the individuals or entities associated with these Defendants. This information is needed to identify the relevant parties and serve them. As set forth below, AXS has established good cause for seeking this relief.

In support, AXS submits this Application, the attached Memorandum of Points and Authorities, the supporting Declaration of J. Michael Keyes ("Keyes Decl."), AXS's concurrently filed Motion for Preliminary Injunction and its Memorandum of Points and Authorities in support thereof, and further relies upon its Verified Complaint, the contents of the Court's file to date, and such further evidence and argument as may be presented at the hearing, if any, on this Application.

For the reasons set forth below, the requested relief is warranted under the Copyright Act, Lanham Act, and under Federal Rules of Civil Procedure 4, 64, and 65.

AXS is unable to conduct a pre-filling conference of counsel under Local Rule 7-3 because at this time AXS is unaware of the true names or identities of

-2-

Defendants Verified-Ticket.com, Amosa.app, and Secure.Tickets let alone their counsel.

AXS has made a good faith effort to advise of this Application, and has provided reasonable notice under the circumstances to each known Defendant. *See* Declaration of J. Michael Keyes ("Keyes Decl.") ¶¶ 6-7. AXS is unaware at the time of filing of any opposition to the application. *Id.* ¶ 8.

Dated:   January 17, 2024                    DORSEY & WHITNEY LLP

By: */s/ J. Michael Keyes*
J. Michael Keyes (SBN 262281)
 *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
 *hansen.connor@dorsey.com*
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA
Telephone:  206.903.8800
Facsimile:   206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
 *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:   714.800.1499

*Attorneys for Plaintiff AXS Group LLC*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff AXS Group LLC ("AXS" or "Plaintiff") provides proprietary ticketing software and services through its website and mobile application (the "AXS Platform"). Verified Complaint ("Compl.") ¶ 2. AXS utilizes the AXS Platform to market, sell, and distribute digital tickets on behalf of its clients and delivers tickets to end users customers who purchase AXS tickets. *Id.* As set out in AXS's Verified Complaint, the tickets purchased through the AXS Platform are branded with AXS's trademarks. *See* Compl. ¶ 30. Plaintiff also owns valid and subsisting copyrights in the mobile application (the "AXS App"), which extends to the user interface as well as the digital tickets created by the AXS Platform. *Id*. ¶¶ 44-47.

Defendants operate third-party ticket retail platforms and/or ticket delivery services. Collectively, Defendants market, advertise, sell, display, distribute, and deliver to consumers digital tickets that purport to be authentic AXS digital tickets. *Id.* ¶ 7. In reality, the digital tickets sold and delivered by Defendants from their email accounts or websites are counterfeits. These counterfeit tickets bear AXS's registered trademarks, reproduce or recreate protected elements of AXS's copyright protected works, and, on information and belief, were created, in whole or in part by one or more of the Defendants illicitly accessing and then copying the AXS App, without AXS's permission or consent. *E.g., id*. This illegal activity is causing disruption to AXS's business and its clients' business and negatively impacting AXS's goodwill and reputation in the marketplace. *See id*. ¶ 8. It is also harming consumers who purchase these counterfeit AXS tickets without knowing that they are fake and many of whom are then denied access to the event. *See id*.

AXS has separately moved for a preliminary injunction. *See* Motion for Preliminary Injunction, filed concurrently herewith, ("Motion for Preliminary Injunction"). As set forth in the Motion for Preliminary Injunction, these counterfeit digital tickets bear Plaintiff's AXS trademarks and emulate, mimic, or copy

-4-

numerous protected elements of Plaintiff's copyrights. Motion for Preliminary Injunction at 5-8. By this Application, AXS seeks an additional order granting leave for limited expedited discovery.

## II.   STATEMENT OF FACTS

Defendant Verified-Ticket sells, facilitates participates in, allows, or is otherwise complicit in delivering counterfeit AXS tickets to unsuspecting consumers in active concert with, at least, the online platforms operated by Defendants Internet Referral Service LLC ("IRS") and Event Tickets Center, Inc. ("ETC"). Compl. ¶¶ 54-64. Defendant Verified-Ticket operates through the domain name verified-ticket.com. *Id.* ¶ 13. The "Whois"[1] report for Verified-Ticket.com indicates that Google LLC acted as the domain registrar for Verified-Ticket.com, but the contact information provided is a proxy called "Contact Privacy Inc. Customer 7151571251." *Id.* Exh. A. Customer Privacy Inc.'s Terms of Service indicate that the Customer number is "an individual customer identification number which is unique per domain name" and "appear[s] as the Registrant and Contacts name(s)" on Whois reports when a customer chooses to use Customer Privacy Inc.'s "Whois Privacy Service." *See* Keyes Decl. Exh. 1 at 1. Accordingly, on information and belief, "Customer 7151571251" is a pseudonym for the individual or entity who owns and operates verified-ticket.com. Compl. ¶ 13. The Terms of Service also indicate that Contact Privacy Inc. will only disclose the identity and contact information of their customers in limited circumstances, including "when required by law" or "to comply with a legal process" served on Customer Privacy Inc. Keyes Decl. Exh. 1 at 2.

Defendant Amosa.app ("Amosa") operates a digital ticket retail and/or

---

[1] Whois is "a domain lookup [that] allows you to trace the ownership and tenure of a domain name" and its reports contain "details such as the registration date of the domain name, when it expires, ownership and contact information, nameserver information of the domain, the registrar via which the domain was purchased, etc." *See* WHOIS, Frequently Asked Questions, https://www.whois.com/whois/ (last accessed October 30, 2023).

EX PARTE APPLICATION
FOR EXPEDITED DISCOVERY                                    Case No. 2:24–CV–00377 CAS (Ex)

delivery service through the domain name amosa.app and the sub-domain axs.amosa.app. Compl. ¶ 14. Similar to the other Defendants, Amosa is engaged in a scheme to create and/or sell and distribute counterfeit AXS digital tickets. *Id.* ¶¶ 82-88. The Whois report for Amosa reveals that Dynadot LLC acted as the registrar, but the contact information provided therein is "Redacted for Privacy." *Id.* ¶ 14 Exh. B. The true identity of the individual or entity that owns and operates Defendant Amosa is unknown to AXS at this time. *Id.* ¶ 14. Dynadot LLC has a "Subpoena Policy" which provides that "Dynadot, LLC will not release customer information or account information" and "if you seek user or account information of a Dynadot customer in connection with a civil legal matter, you must personally serve [Dynadot] with a valid subpoena." *See* Keyes Decl. Exh. 2 at 1.

Defendant Secure.Tickets operates a digital ticket retail and/or delivery service through the domain name secure.tickets. Compl. ¶ 15. Secure.Tickets is engaged in a scheme to create and/or sell and distribute counterfeit AXS digital tickets. *Id.* ¶¶ 89-94. The ICANN report for Secure.Tickets reveals that Namecheap, Inc. acted as the registrar and that the contact information for Secure.Tickets is "Redacted for Privacy." *Id.* ¶ 15 Exh. C. The true identity of the individual or entity that owns and operates Secure.Tickets is unknown to AXS at this time. *Id.* ¶ 15. Namecheap Inc. has a "Court Order & Subpoena Policy" providing that it "will not share customer or account information . . . except under limited circumstances when required by law or legal process properly served on Namecheap." *See* Keyes Decl. Exh. 3 at 1.

Because each of these third party registrars will not disclose their customer's identity or contact information absent a subpoena, Plaintiff requires expedited discovery to subpoena each registrar and identify the companies or individuals behind Defendants Verified-Tickets, Amosa, and Secure.Tickets.

Plaintiff also believes that all five Defendants may operate additional ticket retail platforms, the identities of which are unknown to Plaintiff (Compl. ¶¶ 11-15), and that the Defendants are engaged in a conspiracy to create, sell, and distribute

EX PARTE APPLICATION
FOR EXPEDITED DISCOVERY                                   Case No. 2:24–CV–00377 CAS (Ex)

Counterfeit Tickets. *Id.* ¶¶ 150-56. To support its pending Motion for Preliminary Injunction, Plaintiff seeks expedited discovery to identify each domain operated by Defendants, the sales and customers of each Defendant, communications between the Defendants, and the sources of Defendants' Counterfeit Tickets.

## III. <u>LAW & ARGUMENT</u>

Courts within the Ninth Circuit use the "good cause" standard to examine early discovery requests and base their decisions "on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000)).[2] Courts routinely find that good cause exists to grant plaintiffs leave to take early discovery,[3] and good cause may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *See In re Countrywide Fin. Corp Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (quotation omitted).

Good cause is frequently found in cases involving claims of infringement and unfair competition. *See Semitool*, 208 F.R.D. at 276 (citation omitted); *see also UMG*

---

[2] *See also G.N. Iheaku & Co. v. Doe*, No. C 14–02069 LB, 2014 U.S. Dist. LEXIS 82540, at *5 (N.D. Cal. June 17, 2014) (collecting cases); *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011); *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C 09–05812 JW (PVT), 2010 U.S. Dist. LEXIS 6395, at *4-5 (N.D. Cal. Jan. 7, 2010); *UMG Recordings, Inc. v. Does*, No. 06-0652 SBA (EMC), 2006 U.S. Dist. LEXIS 32821, at *1-2 (N.D. Cal. Mar. 6, 2006); *Arista Records LLC v. Doe*, No. 07-cv-2357-LAB (POR), 2007 U.S. Dist. LEXIS 97774, at *3-4 (S.D. Cal. Dec. 20, 2007); *Hard Drive Prods., Inc. v. Doe*, No. C 11-03825 HRL, 2012 U.S. Dist. LEXIS 45509, at *6-7 (N.D. Cal. Mar. 30, 2012).

[3] *See UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 U.S. Dist. LEXIS 79087, at *10-11 (N.D. Cal. Sept. 2, 2008) (granting expedited discovery in copyright infringement case: "[i]n Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a *prima facie* showing of infringement, there is no other way to identify the doe defendant, and there is a risk an [internet service provider] will destroy its logs prior to the conference."); *Arista Records*, 2007 U.S. Dist. LEXIS 97774, at *3-4; *UMG Recordings*, 2006 U.S. Dist. LEXIS 32821, at *1-2.

EX PARTE APPLICATION
FOR EXPEDITED DISCOVERY                                    Case No. 2:24–CV–00377 CAS (Ex)

*Recordings*, 2008 U.S. Dist. LEXIS 79087, at *10-12 (collecting cases). Additionally, the good cause standard may be satisfied where, as here, a party seeks discovery relating to a preliminary injunction.  *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009); *Qwest Comms. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *see also El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004) ("Expedited discovery [is] appropriate in cases involving preliminary injunctions or challenges to personal jurisdiction.").

### A. Expedited Discovery has been Found Particularly Appropriate in Analogous Trademark Actions

Courts have recognized that expedited discovery is particularly appropriate in cases of trademark infringement.  *See Sas v. Sawabeh Info. Servs. Co.*, No. CV 11-04147 GAF (MANx), 2011 U.S. Dist. LEXIS 161041, at *22 (C.D. Cal. May 17, 2011) ("Expedited discovery should be granted when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time.  Such prejudice is frequently the case where a well-known trademark has been counterfeited and the sources or purchasers of the counterfeit products are unknown to plaintiff.") (quoting *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 250 (S.D. Fla 1982) (internal alterations omitted))).[4]  In addition, plaintiffs in this Circuit have obtained expedited discovery from third parties to determine the extent of a defendant's sales of infringing goods.  *See Speculative Prod. Design, LLC v. Deandrade*, No. CV 13-4311-GW (JCGx), 2014 WL 12603206, at *1 (C.D. Cal. Feb. 13, 2014).  Here, the allegations in AXS's

---

[4] *See also SATA GmbH & Co. KG v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (Ex), 2015 U.S. Dist. LEXIS 147637, at *15-16 (C.D. Cal. Oct. 19, 2015) (finding good cause for expedited discovery in counterfeit case); *Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prods.*, No. CV 16-0969-DOC (JEMx), 2016 U.S. Dist. LEXIS 82147, at *24 (C.D. Cal. June 14, 2016) (finding good cause to expedite discovery in counterfeit case, "so as to aid and enable Plaintiffs to present this Court with a full record regarding both the nature and scope of the counterfeiting activity, including the involvement of each named defendant and other persons and entities conspiring to counterfeit [the] goods.").

Complaint are closely analogous to those in the above-cited actions directed at trademark counterfeiting and unfair competition and expedited discovery should be granted for the same reasons.

### B. Expedited Discovery is Needed to Ascertain the Identities of Defendants Verified-Ticket, Amosa, and Secure.Tickets

The need for prompt identification of defendants who conduct business on the internet—such as Defendants Verified-Ticket, Amosa, and Secure.Tickets in this action, who have concealed their true identities—provides sufficient foundation for limited expedited discovery.

In *Marketo, Inc. v. Doe*, the court found good cause for expedited discovery where the plaintiff sought to issue a subpoena to a third-party domain registrar to learn the true identity of the owners of a website selling allegedly infringing email templates.   No. 18-cv-06792-JSC, 2018 U.S. Dist. LEXIS 197169 (N.D. Cal. Nov. 19, 2018).  In granting the plaintiff's motion the district court noted that, "[u]ltimately, granting early discovery to permit Plaintiff to identify the Doe Defendant appears to be the only way to advance this litigation."  *Id.* at *6 (citing *UMG Recordings*, 2008 U.S. Dist. LEXIS 79087, at *11).  The same is true here. Because the verified-ticket.com, amosa.app, and secure.tickets websites were registered using proxy information and the registrars have policies to conceal that information absent a legal order (*see supra* Section II), Plaintiff is unable to determine who operates the websites absent a subpoena to those registrars.

Good cause exists for the expedited discovery on the third-party registrars. *See Cisco Sys. v. Wuhan Wolon Commun. Tech. Co.*, No. 5:21-cv-04272-EJD, 2021 U.S. Dist. LEXIS 137845, at *31 (N.D. Cal. July 23, 2021) (authorizing expedited discovery to determine "the true identities and contact information of the owners of the identified seller identifications and website domain").  Accordingly, Plaintiff respectfully requests that the Court permit Plaintiff to immediately issue Rule 45 subpoenas to third-party domain registrars Contact Privacy Inc., Dynadot LLC, and

Namecheap Inc. seeking the identifications of and contact information for all individuals or entities who own and operate Defendants Verified-Ticket, Amosa, and Secure.Tickets and their respective websites.

### C. Expedited Discovery is Appropriate Because Plaintiff Requires it To Prove and Enforce its Motion for Preliminary Injunction

As set forth in the Verified Complaint and the pending Motion for Preliminary Injunction, Defendants IRS, ETC, Verified-Ticket, Amosa, and Secure.Tickets are collectively marketing, displaying, selling, and distributing digital tickets that bear Plaintiff's trademarks and reproduce or recreate protected elements of Plaintiff's copyright protected works. *See e.g.,* Compl. ¶ 7. Defendants each play a role in the marketing, sale, and distribution of counterfeit tickets. For example, Plaintiff has seen instances where a ticket purchased through Defendant IRS's tickets-center.com website were delivered by Defendant Verified-Ticket. Compl. ¶¶ 58-60. However, without further discovery, Plaintiff is unable to determine exactly what actions each Defendant is performing or what role each Defendant is taking in the scheme. Accordingly, Plaintiff anticipates that one or more of the Defendants may attempt to avoid liability by asserting that it is a passive participant in the scheme, is unaware of, or has no responsibility for the marketing, offer for sale, sale, display, and distribution of the counterfeit tickets.

While Plaintiff has done its diligence and has submitted a Complaint detailing Defendants' respective conduct, Plaintiff respectfully requests that the Court permit Plaintiff to seek expedited discovery from any such Defendant in the form of:

1. A Rule 30(b)(6) deposition of each such Defendant limited to the following topics: (a) that Defendant's business model and role in marketing, offering for sale, selling, displaying, or distributing counterfeit tickets; (b) that Defendant's relationship, association, or affiliation with any of the other Defendants; (c) that Defendant's knowledge of the sale or distribution of counterfeit AXS tickets through its domain(s), servers, or

other systems as set forth in the Complaint; (d) the identity of all websites or domains owned or operated by that Defendant or its affiliates which are used to market, sell, or distribute tickets; (e) the original sources of any counterfeit tickets marketed, sold, or distributed through that Defendant's websites or domains; and (f) that Defendant's knowledge of Plaintiff or its services and/or that Defendant's access to the AXS Platform.

2.   Rule 34 Requests for Production seeking the production of documents showing:  (a) the identity of that Defendant's customers of digital tickets bearing the AXS marks; (b) that Defendant's communications with each of the other Defendants relating to the marketing, sale, or distribution of digital tickets; (c) the identity of all websites or domains owned or operated by that Defendant or its affiliates which are used to market, sell, or distribute tickets; (d) the original sources of any counterfeit tickets marketed, sold, or distributed through that Defendant's websites or domains; (e) that Defendant's knowledge of Plaintiff or its services and/or that Defendant's access to the AXS Platform; and (f) evidence of that Defendant's revenue received from the marketing, sale, or distribution of digital tickets bearing the AXS Marks.

Courts in the Ninth Circuit routinely permit expedited discovery to enable plaintiffs to discover this type of information in association with a pending motion for preliminary injunction.  *Cisco Sys.*, 2021 U.S. Dist. LEXIS 137845, at *29-30 (collecting cases).  Plaintiff needs the requested expedited discovery "to gather evidence for their motion for preliminary injunction to stop Defendants' infringing activities, identify other individuals and entities that are involved in counterfeiting activities with Defendants, and prevent Defendants from destroying the evidence necessary to establish their claims in the present action."  *Sas*, 2011 U.S. Dist. LEXIS 161041, at *23.

Further, the burden or prejudice on Defendants for providing this discovery is

-11-

negligible because Defendants will have to produce this relevant information during discovery anyway. *Id.* ("[B]ecause the information sought by Plaintiff is relevant to this lawsuit, Defendants are unlikely to be prejudiced by an order granting expedited discovery because Defendants will likely produce this evidence during the normal course of discovery.").

### D.    AXS Will be Prejudiced by the Denial of Expedited Discovery

Despite the likelihood of success of AXS's claims and the injury it has and continues to endure, if this Court were to deny expedited discovery (even if the Court were to grant AXS's requested relief for a preliminary injunction), AXS may nonetheless lose the opportunity to effectively pursue its claims against Defendants because there are several aspects of Defendants' infringing activities that AXS is not yet able to confirm, including, critically, the true identities of all Defendants. *See* Keyes Decl. ¶ 2; Compl. ¶ 63; *see also Admarketplace, Inc. v. Tee Support, Inc.*, No. 13 Civ. 5635 (LGS), 2013 U.S. Dist. LEXIS 129749, at *5 (S.D.N.Y Sep. 11, 2013) (finding that plaintiff "who has a potentially meritorious claim and no ability to enforce it absent expedited discovery, has demonstrated good cause for expedited discovery").

Therefore, only through an order from the Court allowing expedited discovery will AXS be able to fully ascertain the extent of Defendants' infringing activities. *See SATA*, 2015 U.S. Dist. LEXIS 147637, at *34-35 (granting expedited discovery and finding that Plaintiff "'needs to ascertain Defendants' sources of the Counterfeit [products] without delay and to learn of any pending shipments or shipments of Counterfeit [product] en route.' [citation omitted]. Additionally, Plaintiff has shown that the discovery requested is narrowly tailored to obtain information relevant and 'essential' for the preliminary injunction.").

The discovery requested on an expedited basis in AXS's [Proposed] Order has been limited to include only that which is needed to prevent further irreparable harm. AXS's proposed expedited discovery will also assist the merits of the case at the

preliminary injunction hearing.  Further, without expedited discovery, it is possible AXS will suffer a denial of evidence and information necessary for its case because evidence may be secreted, concealed, destroyed, sold off, or otherwise disposed of. *See Hand & Nail Harmony, Inc.*, 2016 U.S. Dist. LEXIS 82147, at *25.  Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with Defendants that are given notice of the Order to provide expedited discovery.  AXS respectfully submits that its request should be granted.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, AXS respectfully requests that its Application be granted *ex parte* and that the Court enter an order authorizing expedited discovery in the form of the [Proposed] Order accompanying this Application, along with an order on AXS's concurrently filed Motion for Preliminary Injunction.


Dated:   January 17, 2024

DORSEY & WHITNEY LLP

By:  */s/ J. Michael Keyes*
J. Michael Keyes (SBN 262281)
  *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
  *hansen.connor@dorsey.com*
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA
Telephone:  206.903.8800
Facsimile:   206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:  714.800.1499

*Attorneys for Plaintiff AXS Group LLC*

EX PARTE APPLICATION
FOR EXPEDITED DISCOVERY

Case No. 2:24–CV–00377 CAS (Ex)

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff AXS Group LLC, certifies that this Memorandum of Points and Authorities contains 3,200 words, which complies with the word limit of L.R. 11-6.1

*/s/ J. Michael Keyes*
J. Michael Keyes, SBN 262281

EX PARTE APPLICATION
FOR EXPEDITED DISCOVERY                    Case No. 2:24–CV–00377 CAS (Ex)

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on January 17, 2024, a true and correct copy of the

3  foregoing was filed electronically using the Court's CM/ECF system, which shall

4  send notification of such filing to all counsel of record. Any counsel of record who

5  has not consented to electronic service through the Court's CM/ECF system will be

6  served by electronic mail.

7

8                                                        */s/ J. Michael Keyes*
                                                         J. Michael Keyes, SBN 262281
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-