UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXS GROUP LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>INTERNET REFERRAL SERVICES, LLC, EVENT TICKETS CENTER, INC., VIRTUAL BARCODE DISTRIBUTION LLC, ALTAN TANRIVERDI, and SECURE.TICKETS,<br><br>　　　　　　　　Defendants. | Case No. 2:24-CV-00377-SPG (Ex)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE FOR ALTERNATIVE SERVICE OF PROCESS BY EMAIL ON DEFENDANT ALTAN TANRIVERDI [ECF 53]** |

　　　Before the Court is Plaintiff AXS Group LLC's ("AXS" or "Plaintiff") Motion for Leave for Alternative Service of Process by Email on Defendant Altan Tanriverdi (the "Motion"). (ECF 53). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds that this matter is suitable for decision without oral argument, *see* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15, and **DENIES** Plaintiff's Motion.

I. **BACKGROUND**

　　　On January 16, 2024, Plaintiff commenced this action against five Defendants, including Amosa.App. *See* (ECF No. 1 ("Compl.")). Plaintiff alleged that Amosa.App operates a digital ticket retail and/or delivery service that sells and/ or distributes

counterfeit AXS digital tickets. (Compl. ¶ 14). Because Plaintiff could not ascertain the "true identity of the individual or entity who own[ed] and operate[d] Defendant Amosa.[A]pp," on January 17, 2024, Plaintiff filed an *ex parte* application requesting leave for expedited discovery to identify Defendant's identity. (Compl. ¶ 14; ECF No. 14). On January 24, 2024, the Court granted the Plaintiff's request. (ECF No. 18).

In response to a Rule 45 subpoena served on Dynadot, LLC, the third-party listed as the registrar that registered the Amosa.App domain, Dynadot, LLC indicated Altan Tanriverdi ("Tanriverdi" or "Defendant") is the owner of the Amosa.App domain. (ECF No. 39 ("FAC") ¶¶ 14–15; ECF No. 53-1 ("Decl.") ¶¶ 3–4).[1] Also, when registering the Amosa.App domain, Dynadot, LLC provided the email address of (altan@yahoo.com), a phone number, and mailing address in Ankara, Turkey that were listed as the "[a]ccount [c]ontact for the Amosa.App domain" and affiliated with Tanriverdi. (FAC ¶ 14–15; Decl. ¶¶ 3–4).

After receiving this information, Plaintiff's counsel conducted an independent investigation. (FAC ¶ 14–15). Dun & Bradstreet corporate reports obtained by Plaintiff's counsel indicate that Tanriverdi was, at some point, the CEO of Senkroni, A.S., a software company located in Ankara, Turkey, and is a founder of DevKit SRL, a software company located in Rome, Italy. (FAC ¶ 15; Decl. ¶¶ 5–7). Plaintiff's counsel also found, through publicly available information, that Senkroni is no longer operating and ceased operations in 2018, the year that DevKit was founded. (FAC ¶ 15; Decl. ¶¶ 5–7). The investigation also revealed that Tanriverdi uses a second email address (altant@gmail.com) that is "link[ed]" with his role at DevKit. (Decl. ¶¶ 5–7.). These investigations have not, however, provided certainty about the present whereabouts of Tanriverdi.

Between February 6 and June 21, 2024, five emails were sent to Defendant at the Yahoo and Gmail addresses that is believed to be associated with Tanriverdi. (Decl. ¶¶ 10–21). The emails did not "bounce back" or generate an error message that would indicate

---

[1] On May 6, 2024, Plaintiff filed an Amended Complaint ("FAC") with the relevant contact information for Tanriverdi. *See* (ECF No. 39).

-2-

that the emails were not delivered. (*Id.* ¶ 20–21). To date, Defendant has not responded to any of these emails. (*Id.*).

On June 21, 2024, Plaintiff filed this Motion for Leave for Alternative Service of Process by Email on Tanriverdi. *See* (ECF No. 53 ("Mot.")). Defendant Event Tickets Center Inc. filed a statement of non-opposition. (ECF No. 57). Defendant Tanriverdi has not responded to or appeared in this action.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 4(f) authorizes service of process on an individual in a foreign country. It states that service may be accomplished:

> (1) By any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) If there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) As prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (B) As the foreign authority directs in response to a letter rogatory or letter of request; or
> >
> > (C) Unless prohibited by the foreign country's law, by:
> >
> > > (i) Delivering a copy of the summons and of the complaint to the individual personally; or
> > >
> > > (ii) Using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) By other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

## III. DISCUSSION

Plaintiff filed the instant Motion requesting that the Court authorize alternative service by email to serve Tanriverdi because his physical location is a "mystery." (Mot. at 1). Plaintiff specifically requests authorization to serve Defendant via email at two email addresses: altan@yahoo.com and altant@gmail.com. Plaintiff believes that Defendant resides in a foreign country—either Turkey or Italy.

Rule 4(f)(3) is the relevant standard by which this Court evaluates Plaintiff's motion because the rule authorizes services of process on an individual in a place not within any judicial district of the United States. Service under Rule 4(f)(3) "must be (1) directed by the court; and (2) not prohibited by international agreement." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Rule 4(f) does not establish a "hierarchy of preferred methods of service of process," and service pursuant to Rule 4(f)(3) may be sought before a plaintiff has exhausted all other means of service. *Id.* at 1014–15. A plaintiff need only demonstrate "that the facts and circumstances of the present case necessitate[] the district court's intervention." *Id* at 1016. And, even if Rule 4(f)(3) permits alternative service, the method "must also comport with constitutional notions of due process . . . ." *Id.* Both requirements must be met for alternative service to be authorized.

Because the Court finds that alternative service by email is prohibited by the Hague Convention, the relevant international agreement, the Court need not address whether alternative service meets the requirements of due process.

### A. Alternative Service by Email is Prohibited by the Hague Convention

Under Rule 4(f)(3), a court may authorize alternative service, such as by email, only if the means of service is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Here, the United States, Italy, and Turkey are all signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Criminal Matters

(the "Hague Convention").[2]  The Court, therefore, considers whether the Hague Convention prohibits service by email.

The Hague Convention is a multilateral treaty "intended to provide a simpler way to process service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Compliance with the Convention is "mandatory in all cases to which it applies." *Id.* at 705. Alternative service methods must also comply with the "exclusive" methods of service that are contemplated in the Convention. *Id.* at 706; *Facebook Inc. v. 9 Xiu Network (Shenzhen) Tech. Co. Ltd.*, 480 F. Supp. 3d 977, 983 (N.D. Cal. 2020) (internal citations omitted).

The Convention does not address service through email.[3] Neither the Ninth Circuit nor the Supreme Court have opined on whether the Convention's silence regarding email service means that it is prohibited by the Convention. District Courts are split on the matter. Some courts have found that the Hague Convention does not prohibit email service. *See, e.g., Google LLC v. Does 1-3,* No. 23-CV-05823-VKD, 2023 WL 8851619, at *2 (N.D. Cal. Dec. 21, 2023) ("Nothing in the Hague Convention itself prohibits alternative service by email, when such service is directed by a court."); *Meyer v. Mittal*, No. 3:21-CV-00621-HZ, 2022 WL 1000774, at *2 (D. Or. Apr. 4, 2022) ("No authority expressly provides or implies that email service is prohibited by international agreement.") (internal citations omitted). Other courts have determined that email service is not permitted under the Hague Convention. *See, e.g., Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 984 (N.D. Cal. 2020) ("Service by e-mail on defendants in China is not among the 'approved methods of service; specified in the Convention."); *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020) ("To permit service by e-mail would bypass the means of service set forth in the Convention.").

---

[2] The Court notes that Turkey objects to service by postal channels allowed under Article 10 of the Hague Convention. Because the Court finds that email service is not permitted under the Convention, the Court need not address this objection.

[3] This omission is not surprising given the timing of the drafting of the Convention, during the 1960s, before email was as ubiquitous as it is today.

In *Facebook, Inc., v. 9 Xiu Network*, the district court held that service by email on the defendants was "not among the approved methods of service specified in the Convention," and was, thus, prohibited. 279 F.R.D. at 984 (internal citations omitted). The district court reasoned that because the Hague Convention "enumerates particular methods for serving document abroad," using a method that is "not enumerated in the Convention would be tantamount to not applying the Convention." *Id.* at 983 (internal citations omitted). Further, because application of the Convention is "mandatory," permitting service by email is "prohibited." *Id.* at 980, 983 (citing *Volkswagenwerk*, 486 U.S. at 705).[4]

In the absence of binding precedent, the Court finds the reasoning in *Facebook* persuasive. The methods of service delineated in the Convention are "exclusive" and "mandatory." *Facebook Inc.*, 480 F. Supp. 3d at 983; *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 698. As such, authorizing service by email, which is not contemplated in the Hague Convention would be equivalent to "bypass[ing] the means of service set forth in the Convention." *Anova Applied Elecs., Inc.,* 334 F.R.D. at 472. Therefore, the Court finds, for the purposes of this Motion, the Convention's silence on email service precludes such service under Rule 4(f)(3).

## IV. CONCLUSION

For all the foregoing reasons, the Court DENIES Plaintiff's request for an order authorizing alternative service of process (ECF No. 53).

**IT IS SO ORDERED.**

DATED: October 10, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[4] *But see Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) ("Where a signatory nation has objection only to those means of service listed in Article X, a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article X").