DORSEY & WHITNEY LLP
J. Michael Keyes (SBN 262281)
  *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
  *hansen.connor@dorsey.com*
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone:  206.903.8800
Facsimile:   206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:  714.800.1499

*Attorneys for Plaintiff AXS Group LLC*

**REDACTED**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXS GROUP LLC,<br><br>      Plaintiff,<br><br>v.<br><br>EVENT TICKETS CENTER, INC., TICKETNETWORK, INC. VIRTUAL BARCODE DISTRIBUTION LLC, ALTAN TANRIVERDI, and SECURE.TICKETS,<br><br>      Defendants. | Case No. 2:24-CV-00377-SPG-(Ex)<br><br>**SECOND AMENDED VERIFIED COMPLAINT FOR:**<br><br>**1) FEDERAL COPYRIGHT INFRINGEMENT;**<br>**2) VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT;**<br>**3) TRADEMARK COUNTERFEITING;**<br>**4) FEDERAL TRADEMARK INFRINGEMENT;**<br>**5) FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION;**<br>**6) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE;**<br>**7) COMMON LAW FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION;**<br>**8) CIVIL CONSPIRACY; AND**<br>**9) BREACH OF CONTRACT.**<br><br>**JURY DEMANDED** |

1    Plaintiff AXS Group LLC by and through its counsel, Dorsey & Whitney LLP,

2 for its Verified Complaint alleges as follows:

3    **I.    INTRODUCTION & SUMMARY OF RELIEF REQUESTED**

4    1.    AXS Group LLC ("AXS," pronounced "Access") brings this action

5 against Defendants Event Tickets Center, Inc., TicketNetwork, Inc., Virtual Barcode

6 Distribution LLC, Altan Tanriverdi, and Secure.Tickets ("Defendants") alleging

7 numerous federal and state claims related to copyright infringement, violations of the

8 Digital Millennium Copyright Act, trademark counterfeiting, trademark

9 infringement, unfair competition, unfair or deceptive trade practices, and civil

10 conspiracy arising from Defendants' willful, deliberate, and malicious acts that are

11 causing substantial and irreparable harm to AXS's goodwill, reputation, and

12 business. Defendants' acts are also causing widespread damage and harm to

13 unwitting consumers who are the victims of Defendants' fraudulent conduct.

14    2.    AXS provides proprietary ticketing software and services including

15 through an internet website and mobile application (the "AXS Platform") to hundreds

16 of event organizer clients who present sports and entertainment events in the United

17 States, including the Crypto.com Arena in Los Angeles, the T-Mobile Arena in Las

18 Vegas, Nevada, and the Ryman Auditorium and Grand Ol Opry in Nashville,

19 Tennessee.  AXS utilizes the AXS Platform to market, sell and distribute tickets on

20 behalf of its event organizer clients, and delivers digital tickets to end user customers

21 who purchased tickets on the AXS Platform using AXS's patented AXS Mobile ID

22 technology.

23    3.    The original sales process, where the tickets to an event are sold to the

24 public on behalf of event organizers for the first time, is sometimes known as the

25 "primary market" sale of tickets.  After a ticket has been sold on the primary market,

26 the purchaser of such ticket, who for the most popular events where the highest resale

27 prices are commanded, is often a professional reseller or broker making a large profit

28 on the resale of the ticket, will list the ticket for sale on a website that offers the ticket

1    for resale or what is sometimes known as the "secondary market" sale of tickets.

2       4.    AXS sells "primary market" tickets on behalf of its clients and also

3    provides a "secondary market" service for persons who purchased an AXS client

4    event ticket in the primary market to post their ticket for resale using a feature of the

5    AXS Platform (known as "AXS Official Resale"), where new end user buyers can

6    purchase the ticket and AXS will fulfill the delivery of the ticket using AXS Mobile

7    ID technology.

8       5.    AXS does not own any of the tickets that it sells.  Rather, in the primary

9    market, AXS acts in an agency capacity for its clients—the venues, promoters, and

10   teams on whose behalf AXS sells live event tickets to their fans.  In the secondary

11   (resale) market, AXS offers the sales platform and ticket delivery for resellers to sell

12   their tickets to new buyers on the AXS Official Resale marketplace.  AXS's goal is

13   to serve its clients by getting authentic tickets into the hands of their fans on the terms

14   established by those clients, and to serve fans by providing them access to buy tickets

15   for the events they want to attend.

16      6.    As detailed herein, the tickets purchased through the AXS Platform are

17   branded with Plaintiff's trademarks.  Plaintiff owns a valid and subsisting copyright

18   in the mobile application (the "AXS App") that allows users to buy, sell, view, and

19   use their digital tickets.  Further, as set forth below, in order to prevent fraudulent

20   activity, Plaintiff has developed proprietary security features to ensure that AXS

21   digital tickets are associated with the consumers who purchased them and ensure that

22   consumer data is protected.

23      7.    Defendants operate third-party ticket retail platforms and/or ticket

24   delivery services, listing, selling and delivering secondary market tickets listed by

25   ticket resellers or brokers on third party secondary market ticket sales websites.

26   Collectively, and on information and belief, Defendants market, advertise, sell,

27   display, distribute, and/or deliver to consumers digital tickets that purport to be

28   authentic AXS digital tickets. In reality though, the digital tickets, made to look like

-3-

AXS tickets, distributed by Defendants through unaffiliated websites or emails are counterfeits. These counterfeit tickets bear Plaintiff's trademarks and, on information and belief, were created, in whole or in part by one or more of the Defendants illicitly accessing and then mimicking, emulating, or copying tickets from the AXS Platform and/or the AXS App, without Plaintiff's permission or consent. Further, at least Event Tickets Center, Inc. has also represented to consumers that it is using AXS's proprietary technology to sell, resell, deliver, or transfer tickets, when it is in fact circumventing AXS's technology. Defendants operate in the shadows of the internet. In some instances, Defendants have gone to great lengths to conceal their identities.

8.    This pernicious and illicit activity is causing disruption to Plaintiff's business and negatively impacting its goodwill and reputation in the marketplace as well as harming and disrupting the business of AXS's clients. Consumers who purchase or are sent these counterfeit AXS tickets do not know the tickets of the delivery method are fake. These consumers do not know that the ticket and delivery method is not actually associated with AXS because both the ticket and the delivery method look like real AXS tickets or the real AXS App. Consumers who receive these fake tickets unwittingly arrive at the venue, present what they think are authentic tickets from the venue's official ticketing provider (i.e., AXS) and may be turned away or otherwise denied admission. These aggrieved consumers, in turn, believe Plaintiff is the cause of the problem when, in reality, Defendants are the culprits behind these brazen and blatantly illegal acts.

9.    Defendants' continued unauthorized use of Plaintiff's trademarks and protected elements of Plaintiff's copyright protected work inflicts damage and injury to AXS's goodwill, reputation, and business and has and will continue to cause widespread, irreparable injury unless enjoined by this Court. Plaintiff seeks expedited discovery, immediate injunctive relief, all monetary damages available to it in law or in equity, and an award of attorneys' fees and costs for Defendants' wanton and oppressive conduct.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

1

## II.    PARTIES

2        10.    AXS is a limited liability company organized under the laws of the state

3    of Delaware and has its principal place of business in this judicial district at 425 W.

4    11th Street, Los Angeles, CA 90015, United States.

5        11.    Defendant Event Tickets Center, Inc. ("ETC") is a corporation

6    organized under the laws of the State of Florida with its principal address at 308 West

7    University Avenue, Suite B, Gainesville, FL 32601.  As described further below,

8    Defendant ETC operates a digital ticket retail and/or delivery service through the

9    domain name eventticketscenter.com.  On information and belief, ETC may own

10   and/or operate additional ticket retail platforms, the identities of which are unknown

11   to Plaintiff.

12       12.    Defendant TicketNetwork, Inc. ("TNI") is a corporation organized

13   under the laws of the state of Delaware.  On information and belief, TNI's principal

14   place of business is located at 75 Gerber Road East, South Windsor, CT 06074.  As

15   described further below, Defendant TNI operates a ticket retail and/or delivery

16   service through the domain name ticketnetwork.com and provides software through

17   which third-party ticket brokers list tickets for sale on several ticket retail platforms,

18   including ETC's eventticketscenter.com.  On information and belief, TNI may own

19   and/or operate additional ticket retail platforms.

20       13.    Defendant Virtual Barcode Distribution LLC ("VBD") is a limited

21   liability company organized under the laws of the State of New York with its

22   registered address at 42 Potter Lane, Great Neck, NY 11024.  As described further

23   below, Defendant VBD operates a digital ticket retail and/or delivery service through

24   the domain name verified-ticket.com. Attached hereto as **Exhibit A** is a copy of the

25   "Whois" [1] report for Defendant VBD's verified-ticket.com domain. As set forth

26   _____

27   [1] Whois is "a domain lookup [that] allows you to trace the ownership and tenure of
     a domain name" and its reports contain "details such as the registration date of the
28   domain name, when it expires, ownership and contact information, nameserver
     information of the domain, the registrar via which the domain was purchased, etc."

-5-

SECOND AMENDED VERIFIED COMPLAINT          Case No. 2:24-CV-00377-SPG (Ex)

therein, Google LLC acted as the domain name registrar for Defendant VBD's verified-ticket.com and the contact information provided is a proxy called "Contact Privacy Inc. Customer 7151571251."  Google LLC informed Plaintiff's counsel that Squarespace is now the registrar of the domain.  In response to a Rule 45 subpoena, Squarespace identified Defendant VBD as the owner of the verified-ticket.com domain.  On information and belief, VBD may own and/or operate additional ticket retail platforms, the identities of which are unknown to Plaintiff.

14.    Defendant Altan Tanriverdi ("Tanriverdi") is an individual who operates a digital ticket retail and/or delivery service through the domain name amosa.app.  Attached hereto as **Exhibit B** is a copy of the Whois report for Defendant Tanriverdi's amosa.app domain. As shown in that Whois report, Dynadot LLC acted as the registrar for Defendant amosa.app.  On information and belief, Defendant Tanriverdi may own and/or operate additional ticket retail platforms, the identities of which are unknown to Plaintiff.

15.    In response to a Rule 45 subpoena, DynaDot LLC indicated that Mr. Tanriverdi is the owner of the amosa.app domain and provided the following contact information when registering the amosa.app domain: email altan@yahoo.com and address Emek Mah, Kirim Cad. 34/B, Ankara, Turkey 06490.    Plaintiff's investigation suggests that Mr. Tanriverdi was previously employed by Senkroni, A.S., a software company located in Bodrum, Turkey, and is now employed by DevKit, a software company located in Rome, Italy.   Accordingly, Plaintiff is unaware of Mr. Tanriverdi's current physical address.  Plaintiff has discovered that Mr. Tanriverdi uses a second email address altant@gmail.com.

16.    Defendant Secure.Tickets operates a digital ticket retail and/or delivery service through the domain secure.tickets.  Attached hereto as **Exhibit C** is a copy of the International Corporation for Assigned Names and Numbers (ICANN) report for

---

*See* WHOIS, Frequently Asked Questions, https://www.whois.com/whois/ (last accessed June 30, 2023).

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

Defendant Secure.Tickets. As shown in the ICANN report, Namecheap Inc. acted as the registrar for the secure.tickets domain and the contact information provided therein is "Redacted for Privacy."

## III.  JURISDICTION AND VENUE

17.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and § 1338 because this dispute concerns the rights of parties under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

18.  This Court has supplemental jurisdiction over all state claims under 28 U.S.C. § 1367 because all state law claims asserted herein are related to the same controversy, specifically Defendants marketing, offering for sale, and sale of counterfeit tickets, which give rise to the federal causes of action.

19.  This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants regularly: (a) conduct, transact, and/or solicit business in California and in this judicial district; (b) derive substantial revenue from their business transactions in California and in this judicial district; and/or otherwise (c) avail themselves of the privileges and protections of the State of California such that this Court's assertion of jurisdiction does not offend traditional notions of fair play and due process. For example, as set forth in more detail below, one or more of the Defendants have offered for sale, sold, distributed, displayed and/or allowed to be displayed counterfeit tickets to consumers in this judicial district, including fake or fraudulent digital tickets to games for the LA Clippers and LA Kings. In addition, Defendants' infringing conduct has caused injury to Plaintiff in California and this judicial district such that Defendants should reasonably expect such actions to have consequences in California and this judicial district.

20.  Further, on information and belief, one or more of the Defendants have downloaded the AXS App for purposes of reverse-engineering it and otherwise violating the Copyright Act as detailed and set forth herein. When using or

SECOND AMENDED VERIFIED COMPLAINT          Case No. 2:24-CV-00377-SPG (Ex)

downloading the AXS App, users agree to and are bound by AXS's Terms of Use, which provide: "you agree that any action at law or in equity arising out of or relating to these Terms shall be filed only in the state or federal courts located in Los Angeles County, California, and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action." Accordingly, Defendants have consented to personal jurisdiction in this judicial district.

21.    Alternatively, this Court has personal jurisdiction over any foreign Defendants pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure to the extent any given Defendant is not subject to the jurisdiction of any state's court of general jurisdiction, because exercising jurisdiction over Defendants, who conduct substantial business with consumers in the United States, is consistent with the United States Constitution and its laws.

22.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and § 1400 because, as described herein, Defendants conduct, transact, and/or solicit business in this judicial district and the actions that give rise to the allegations of this Complaint, namely Defendants' marketing, offering for sale, and sale of tickets to consumers occur in this district. Defendants are also subject to Plaintiff's Terms of Use, as noted above, which require any lawsuit to be brought in the state or federal courts in Los Angeles.

## IV.    PLAINTIFF'S E-TICKETING BUSINESS OPERATION

### A.    The AXS Platform for Selling and Re-Selling Tickets

23.    The AXS Platform includes an online website (https://www.axs.com) and the AXS App, which interoperates with the AXS website to provide ticket sale and distribution for sports and entertainment events.  The AXS App is available for download from both the Apple App Store (for Apple devices) and Google Play Store (for Android devices).  In the Apple App Store, the AXS App has an average rating of 4.7 out of 5 stars, with nearly 267,000 ratings as of the time this Complaint was filed.  In the Google Play Store, the AXS App enjoys a 4.3 star rating, has nearly

20,000 reviews, and has been downloaded more than 5,000,000 times. In total, the AXS App has been downloaded by ███████████ users. Consumers can search for and purchase primary market and resale tickets to various AXS client events through the AXS Platform, both online and in the AXS App.

24.    AXS uses security and access control measures to prevent misuse of the AXS App, including ██████████████████████████████████████ ████████████████████.

25.    Plaintiff has more than 300 event organizer clients and sells millions of tickets for thousands of events per year in the United Sates. AXS assures consumers that AXS tickets purchased through the AXS Platform, whether a primary sale or a secondary sale ticket, are "100% authentic tickets."

26.    When a ticket is sold again from the buyer of that ticket to a new buyer, it is sometimes known as a "resale" or a "secondary market" ticket. In the primary market, the venue, team, or event promoter sets the price for the ticket. In the resale market, ticket prices are set by the ticket reseller (also referred to as a "broker"). If a reseller or broker sells a genuine AXS ticket through AXS Official Resale, that resold ticket will be delivered through the AXS Platform directly to the purchaser in their AXS App. In order to access that resold ticket, the purchaser will have to download the AXS App on a mobile device so that the authentic AXS ticket can be delivered. AXS assures consumers that resale tickets purchased through the AXS Platform are "100% authentic tickets."

27.    Depending on the client, event, or venue, some tickets sold through the AXS platform include "premium" benefits such as access to enhanced seating or "VIP packages" that may include additional perks such as special merchandise, access to "meet-and-greets" with celebrities, and other benefits. The benefits are then associated with the authentic AXS ticket and will render in the customer's AXS App. If a ticket has been counterfeited, mimicked, or emulated, as is the case with the

SECOND AMENDED VERIFIED COMPLAINT                Case No. 2:24-CV-00377-SPG (Ex)

tickets marketed by Defendants, the premium benefits may not render in the customer's AXS App, thus denying the customer the benefits that they purchased.

**B.    AXS Mobile ID Technology (Formerly Known as "Flash Seats")**

28.    Regardless of whether consumers purchase original issue primary market tickets from AXS, or resale market tickets through AXS Official Resale, AXS ensures they are "100% authentic" because of proprietary software developed by AXS called "AXS Mobile ID." AXS Mobile ID is an identity-based ticketing technology that assigns a unique identifier to each consumer and a mechanism for associating each digital ticket to the proper consumer. For security purposes, AXS developed a proprietary code-rotation algorithm, which changes the "QR code"[2] on an AXS Mobile ID digital ticket on a variable duration, typically set to every 59 seconds. The term "AXS Mobile ID" is prominently displayed on Plaintiff's website and other locations and is often times accompanied by explanatory text about how AXS Mobile ID provides a "secure ticketing experience for fans."

29.    Regardless of whether a consumer purchases a primary or resale market AXS digital ticket, the ticket will *always be delivered to the purchaser inside the AXS App on the purchaser's mobile device*. The purchaser then presents the digital ticket inside the AXS App at the venue to gain admission.

30.    AXS uses a distinctive and recognizable color scheme and layout for its digital tickets in the AXS App. There is an ability for the customer to select from a few color schemes and likewise newer AXS App versions have modified layouts, but genuine AXS tickets always have small AXS digital watermarks throughout the background and prominently display the term AXS Mobile ID. There is also a rotating QR code generated from within the AXS App, along with information about

---

[2] A QR Code is a "two-dimensional barcode printed as a square pattern of black and white squares that encodes data." *QR Code*, Merriam-Webster, https://www.merriam-webster.com/dictionary/QR%20code (last accessed June 30, 2023).

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

the venue, event, and purchaser contained on the face of the digital ticket. The default and most common color scheme contains a deep, rich purple hue background. The following is an example of how a typical AXS digital ticket appears within the AXS App:



31. Since at least September 1, 2020, Plaintiff has promoted AXS Mobile ID to customers and prospective customers to assure them that both the sale and purchase of AXS digital tickets is safe and secure. These assurances about AXS Mobile ID are prominently displayed and promoted to consumers and fans. They can be found on multiple locations on AXS's website, on the Apple App and Google Play stores, and several Youtube.com videos. Attached hereto as **Exhibit D** are true and correct examples of how AXS Mobile ID is promoted to the public.

32. Further, many of AXS's client websites that operate entertainment venues and professional sports associations in the Los Angeles area and beyond also

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

tout the safety and security of using AXS Mobile ID. These include, but are not limited to, Crypto.com Arena, the National Hockey League, The Regency Ballroom in San Francisco, and T-Mobile Arena in Las Vegas.  Attached hereto as **Exhibit E** are true and correct copies of website printouts from these organizations where they promote the safety and security of AXS Mobile ID.

33.    Prior to adopting "AXS Mobile ID," AXS had previously used the trademark "Flash Seats" (dating back to at least April 2006) as the name for the electronic delivery of authentic AXS tickets to consumers.  References to "Flash Seats" are still made on axs.com, as well as third-party sites that state things such as "AXS Mobile ID (formerly Flash Seats)."  Attached hereto as **Exhibit F** are true and correct copies of references to AXS's "Flash Seats."

34.    To date, AXS (and its clients) have sold millions of AXS-branded genuine electronic tickets to consumers and other purchasers in the U.S.  In 2022 alone, AXS generated revenues ████████████████████████████████ ████ .

35.    Importantly, genuine AXS digital tickets using AXS Mobile ID are **not** delivered to a purchaser's email account.  Further, genuine AXS digital tickets are **not** delivered to any sort of website where purchasers are required to log in and show their digital ticket to gain admission.  As detailed herein, the counterfeit digital tickets at the center of this dispute are being delivered directly to purchasers' email accounts, or through a website unaffiliated with AXS—telltale signs that the consumers have purchased counterfeit tickets.

## V.    PLAINTIFF'S VALID AND SUBSISTING INTELLECTUAL PROPERTY RIGHTS

### A.    The AXS Trademarks

36.    Plaintiff has used the name "AXS" since at least as early as August 2011 to offer its goods and services in commerce to consumers in the United States.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

37.    Plaintiff markets its goods and services through its own website, through the AXS App, through its clients, the venue, team and event promoters whose tickets AXS makes available via the AXS Platform, through various social media platforms, and through other print and electronic media.

38.    Plaintiff and its services have also been featured in prominent, national publications, including but not limited to *The Los Angeles Times*, *The New York Times*, *Business Wire*, *Variety*, and *Billboard*.  Examples of just some of the articles from these organizations are attached hereto as **Exhibit G**.

39.    Through its extensive marketing and exclusive use of the AXS brand, Plaintiff has developed tremendous goodwill associated with it, and consumers have come to associate the AXS brand exclusively with Plaintiff.

40.    Plaintiff has made significant investments in developing and protecting the AXS brand.    Plaintiff owns the following U.S. trademark registrations (hereinafter "AXS Registrations"), all of which have been duly registered with the United States Patent and Trademark Office ("USPTO):

| Reg. No. | Trademark | Goods/Services |
|---|---|---|
| 4,429,044 | AXS | 35: Promotion of sporting events, musical concerts and other entertainment events of others<br>41: Arranging for ticket reservations for sporting events, musical concerts and other entertainment events; Ticket agency services for sporting events, musical concerts and other entertainment events, rendered online, through phone orders and through ticket outlets |
| 4,830,497 | AXS ADVANTAGE | 9: Computer software for building customer lists and marketing campaigns related to entertainment and sporting events |
| 5,880,643 | AXS ANYWHERE | 41: Arranging for ticket reservations for sporting events, musical concerts and other entertainment events; Ticket agency services for sporting events, musical concerts and other entertainment events, rendered online, through phone orders and through ticket outlets in various channels of distribution |

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

| 5,954,081 | AXS INTELLIGENCE | 35: Business research and data analysis services in the field of ticketing for live sports and music events |
|---|---|---|
| 5,953,686 | AXS INSIGHT | 35: Business research and data analysis services in the field of ticketing for live sports and music events |
| 5,680,286 | AXS PATIO SESSIONS | 9: Audio and video recordings featuring recorded musical performances provided through internet, video-on-demand, digital media and other forms of transmission media<br><br>41: Entertainment services in the nature of a live performances, provided live and through internet, video-on-demand, digital media and other forms of transmission media; providing online information in the field of entertainment concerning performances by musicians and bands; providing a website featuring non-downloadable audio recordings in the field of musical performances provided through internet, video-on-demand, digital media and other forms of transmission media |

41.     Each of the AXS Registrations is valid, subsisting, and in full force and effect.  True and correct copies of the AXS Registrations are attached hereto as **Exhibit H**.  Further, Registration No. 4,429,044 and Registration No. 4,830,497 are "incontestable" because Plaintiff has used them continuously for at least five consecutive years and the USPTO has acknowledged the declarations of incontestability for these registrations.  Plaintiff owns each of the AXS Registrations[3] and enjoys common law rights with respect to the marks set forth in those AXS Registrations as well.

42.     Additionally, Plaintiff also owns common law trademark rights with respect to "AXS Mobile ID" for its proprietary software components that ensure consumers that they are using safe and secure AXS technology to buy and sell their digital tickets.  Prior to adopting AXS Mobile ID, AXS used the term "Flash Seats"

---

[3] Plaintiff owns Registration No. 4,429,044 by assignment.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

as the name for its proprietary components that ensured consumers they are using safe and secure AXS technology to buy and sell their tickets.  AXS also owns common law trademark rights in "Flash Seats."  On March 4, 2021, AXS applied to register with the USPTO the mark "Flash Seats" for, among other services, "[p]roviding temporary use of on-line non-downloadable software for use in the sports and entertainment industries, namely, software for use in the issuance, printing and exchange of event tickets."  Attached hereto as **Exhibit I** is a true and correct copy of the Notice of Allowance issued by the USPTO on September 28, 2021.  Both AXS Mobile ID and Flash Seats have been used in commerce by Plaintiff long before Defendants started their illicit marketing and infringement regimes.

43.    The marks as reflected in the AXS Registrations, and the common law rights to the marks reflected in the AXS Registrations and to the marks "AXS Mobile ID" and "Flash Seats," are all collectively referred to herein as the "AXS Marks."

**B.    The AXS Copyrights**

44.    Plaintiff also owns copyright registrations covering the AXS App.  The copyright registrations cover both the iOS version of the AXS App available on the Apple App Store and the Android version of the AXS App available on the Google Play Store.

45.    The United States Copyright Office registered Plaintiff's copyright in "AXS Mobile Application for iOS, Version 5.8.7" under Number TX0009296416, with an effective registration date of July 26, 2023.  A true and correct copy of the Certificate of Registration is attached hereto as **Exhibit J**.

46.    The United States Copyright Office registered Plaintiff's copyright in "AXS Mobile Application for Android, Version 5.8.7" under Number TX0009300435, with an effective registration date of August 15, 2023.  A true and correct copy of the Certificate of Registration is attached hereto as **Exhibit K**.

47.    The Certificates of Registration are *prima facie* evidence of the validity of Plaintiff's copyrights in the AXS App.  The copyrighted works as reflected in the

Certificates of Registration are collectively referred to herein as the "AXS App Copyrights."

48.    By operation of law, the Copyright Registrations cover Plaintiff's source code embodied in the AXS App, both the iOS and Android versions, as well the user interface of the AXS App and all copyrightable content on the screen displays generated by the source code, including the arrangement and selection of the digital tickets.

**C.    Notice of Plaintiff's Trademarks and Copyrights**

49.    Plaintiff provides notice of its trademarks and copyrights rights to consumers and individuals or entities who use Plaintiff's AXS Platform.    For example, on its website, axs.com, and the AXS App, Plaintiff's Terms of Use provides the following notice relating to Plaintiff's trademark and copyrights:

> We are the owner or licensee of all of the content contained on the Services (which includes, without limitation, all graphics, text, images, photographs, videos, illustrations, and the design, selection and arrangement thereof), as well as the software (including any images or files incorporated in or generated by the software), underlying code, and data accompanying the software for the Site (collectively, the "Software").  The Services and Software are protected by copyright, patent and/or trademark and/or other proprietary intellectual property rights, which are owned or licensed by us, and are protected under United States and international intellectual property laws.  By using the Services, you acknowledge that you do not acquire any ownership rights to the Services, Software or any contents thereof.

AXS    Terms    of    Use,    *Ownership*,    https://www.axs.com/about-terms-of-use_US_v1.html (Dec. 14, 2018) (last accessed November 6, 2023).

50.    Plaintiff's Terms of Use also include limits or prohibitions on using Plaintiff's copyright protected materials, including the AXS App in particular:

> Our Mobile App is protected by copyright and may not be sold, redistributed, copied, made available to the public, or part of a derivative work created by you without the express written consent of AXS.  You may not attempt to decompile, reverse engineer, disassemble or otherwise modify our Mobile App, or in any way compromise the security of data stored or transmitted by our Mobile App.

-16-

AXS    Terms    of    Use,    *Permitted    Use    of    Mobile    Application*, https://www.axs.com/about-terms-of-use_US_v1.html (Dec. 14, 2018) (last accessed November 6, 2023).

51.    Similarly, Plaintiff's Terms of Service provide the following limitations and prohibitions relating to use of Plaintiff's trademarks:

> The trademarks, logos, and service marks displayed on the Services (collectively the "Trademarks") are the registered and unregistered trademarks owned by us or by our licensors, service providers and or others that have granted us permission to use such Trademarks. You may not use the Trademarks in connection with any product or service that is not offered by us, and users are not granted any license or right to use the Trademarks for commercial or any unauthorized purposes.

AXS Terms of Use, *Limited License; Restrictions*, https://www.axs.com/about-terms-of-use_US_v1.html (Dec. 14, 2018) (last accessed November 6, 2023).

## VI.    DEFENDANTS' INFRINGING AND ILLICIT COUNTERFEITING OPERATIONS

52.    This case relates to Defendants' activities with respect to the marketing, sale, and delivery of resale tickets in the secondary market for entertainment and sporting event tickets.

53.    Defendants operate online retail platforms and/or ticket delivery services.  As set forth herein, and on information and belief, they have marketed, distributed, sold, displayed, and/or delivered counterfeit AXS tickets to consumers for a variety of events in this judicial district and beyond.  Further, ETC is engaged in additional widespread trademark infringement and unfair competition in addition to the counterfeit ticket schemes as set forth herein.

### A.    ETC Delivers Counterfeit AXS Digital Tickets to Unsuspecting Consumers in Cooperation with VBD

54.    Defendant ETC targets consumers in this judicial district by marketing, distributing, and selling tickets to events in the Los Angeles area. Shown below is the eventticketscenter.com website showing that as of November 3, 2023, ETC was

-17-

promoting and offering for sale tickets to several events in Los Angeles and the surrounding areas:



55.    ETC sells, facilitates, participates in, allows, delivers or is otherwise complicit in counterfeit AXS tickets being sold through eventticketscenter.com to purchasers who are duped into believing that the tickets are genuine.  On information and belief, agents of ETC either know of this rampant practice and have failed to stop it, or these agents are actively involved in the process.

56.    On information and belief, Defendant ETC has a direct financial interest in the marketing, sale, or distribution of counterfeit AXS tickets and it retains a commission and/or portion of the sales price for each ticket and charges fees for each ticket sold through its websites.

57.    For its part in this operation, Defendant VBD through verified-ticket.com sells, facilitates, participates in, allows, or is otherwise complicit in delivering counterfeit AXS tickets to these unsuspecting consumers. On information and belief, this conduct is occurring here within this judicial district and beyond.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

58.    On information and belief, Defendant VBD has a direct financial interest in the marketing, sale, or distribution of counterfeit AXS tickets and it retains a commission and/or portion of the sales price for each ticket and charges fees for each ticket sold through its services.

59.    As just one example of this fraudulent scheme, earlier this year, an unsuspecting consumer by the name of "Nate" purchased a ticket to a Washington Wizards game set to be played on February 16, 2023.

60.    Prior to the game, the purchaser received an email from Defendant VBD's verified-ticket.com, containing his purported digital "ticket" to the game. This was a counterfeit, but it had all the earmarks of a genuine ticket, complete with the deep purple backdrop, AXS watermarks, and a rotating QR code in the middle:



61.    As another example, this summer a consumer by the name of "Scott" purchased a ticket to the U.S. Women's Open Golf Championship from Defendant ETC's eventticketscenter.com website. He received the following email verification from eventticketscenter.com confirming the purchase and informing Scott that the tickets had been transferred to his account:

-19-

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)



62.    The consumer later received his ticket from Defendant VBD's verified-ticket.com, which was a counterfeit AXS ticket containing all the elements of a genuine ticket, including the deep purple backdrop, AXS watermarks, and a rotating QR code in the middle[4]:



---

[4] Verified-ticket.com appears to have duped other concert goers in Los Angeles who purchased tickets via other 3rd party platforms. *See, e.g.,* https://www.reddit.com/r/Foofighters/comments/xk94t2/im_going_to_la/.

SECOND AMENDED VERIFIED COMPLAINT                Case No. 2:24-CV-00377-SPG (Ex)

63.    Although it is not exactly clear how these Defendants are creating counterfeit tickets, AXS's Chief Technology Officer, Mr. Alex Hazboun, believes that one or more of the Defendants involved in this scheme (or individuals acting on their behalf) have: (i) downloaded the AXS App or an AXS SDK (software development kit); (ii) bypassed security and access control measures to decompile, reverse engineer, disassemble or otherwise modify the AXS App or AXS SDK ██ ████████████████████████████████████ create lookalike websites; and then (iii) created and delivered counterfeit digital tickets that look like authentic AXS Mobile ID tickets to unsuspecting purchasers.

64.    Not only do these acts constitute willful and malicious acts of infringement, and violations of the Digital Millennium Copyright Act, they are also in direct contravention of the Terms of Use for the AXS App that Defendants would have assented to before they downloaded it to commence their illicit scheme.

65.    These illicit acts are causing and are likely to cause significant damages and harm to Plaintiff's reputation.

**B.    TNI Markets and Delivers Counterfeit AXS Digital Tickets to Unsuspecting Consumers and Provides Software to Facilitate the Same**

66.    Like ETC, Defendant TNI maintains a website to market, distribute, and sell tickets to events, including events in the Los Angeles area.  Shown below is a screenshot of TNI's ticketnetwork.com website showing that as of August 27, 2024, TNI was promoting and offering for sale tickets to several events in Los Angeles and the surrounding areas:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



67.    TNI sells, facilitates, participates in, allows, delivers or is otherwise complicit in counterfeit AXS tickets being sold through ticketnetwork.com to purchasers who are duped into believing that the tickets are genuine.  On information and belief, agents of TNI either know of this rampant practice and have failed to stop it, or these agents are actively involved in the process.

68.    On information and belief, through the ticketnetwork.com website, TNI has marketed, sold, and distributed counterfeit AXS tickets to consumers.

69.    In addition to managing its own ticket marketing website, TNI offers software solutions for third-parties to market, distribute and sell tickets.  These software solutions include, at least, POS 11, POSNext, ezEvent, Mercury, TN Link, and Seatics.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

70.    For example, TNI's Mercury software is advertised as an "API-driven product that provides premium quality real-time ticket inventory, while allowing [users] to own the full customer experience, market directly to their customers, and grow [their] brand."    *See* https://corporate.ticketnetwork.com/products-services/mercury-retail-integrations/.    According to its website, TNI's Mercury software provides TNI's clients with ticket inventory at wholesale prices.  *Id.*

71.    As another example, TNI's POSNext software is advertised as a "the most advanced distribution platform in the secondary ticket industry" and as a "web-based, mobile optimized POS system with low selling fees and advanced reporting." *See*    https://corporate.ticketnetwork.com/products-services/pos-next/.    Users of POSNext have access to TNI's "Mercury marketplace." *Id.*

72.    On information and belief, using TNI's software, including but not limited to Mercury and POSNext, third-party brokers are able to and have marketed, sold, and distributed counterfeit AXS tickets to consumers through ticketnetwork.com website.

73.    On information and belief, TNI's software serves as a marketplace for other ticket retailers, including Defendant ETC, to source tickets that are marketed, sold, and distributed through those retail websites.  ETC has marketed, sold, and distributed counterfeit AXS tickets using TNI's software, including the example set forth above.

74.    TNI facilitates, encourages, and materially contributes to the marketing, sale, and distribution of counterfeit AXS tickets by designing, offering, and maintaining software that is used for that purpose.

75.    During the course of investigating this matter, Plaintiff learned of TNI's involvement in this scheme and notified TNI that its software was being used to market, sell, and distribute counterfeit AXS tickets, including by specific brokers that Plaintiff identified as bad actors.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

76.    On information and belief, agents of TNI either know of this rampant practice and have failed to stop it, or these agents are actively involved in the process.

77.    On information and belief, TNI derives a financial benefit from the marketing, sale, and distribution of counterfeit AXS tickets, whether through its own website or through third-party websites that use its software, because TNI retains a commission and/or some portion of the fees charged for counterfeit tickets and/or charges a fee for use of its software.

78.    Although it is not exactly clear how TNI is creating or distributing counterfeit tickets, AXS's Chief Technology Officer, Mr. Alex Hazboun, believes that one or more of the Defendants involved in this scheme (or individuals acting on their behalf) have: (i) downloaded the AXS App or an AXS SDK (software development kit); (ii) bypassed security and access control measures to decompile, reverse engineer, disassemble or otherwise modify the AXS App or AXS SDK ███ ████████████████████████████████ create lookalike websites; and then (iii) created and delivered counterfeit digital tickets that look like authentic AXS Mobile ID tickets to unsuspecting purchasers.

79.    Not only do these acts constitute willful and malicious acts of infringement, and violations of the Digital Millennium Copyright Act, they are also in direct contravention of the Terms of Use for the AXS App that Defendants would have assented to before they downloaded it to commence their illicit scheme.

80.    These illicit acts are causing and are likely to cause significant damages and harm to Plaintiff's reputation.

**C.    ETC's Independent Acts of Infringement and Unfair Competition**

81.    Defendant ETC is also engaged in independent acts of trademark infringement and unfair competition, separate and apart from the fraudulent fake ticket scheme detailed above.  As noted earlier, Defendant ETC advertises for sale numerous digital tickets for concerts and other Los Angeles-based events on

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

eventticketscenter.com.  In advertising and promoting many of these events, eventticketscenter.com notes that the delivery method for these tickets will be accomplished by "Flash Seats."

82.    Defendant ETC charges consumers "service and delivery fees."  While eventticketscenter.com does not display an itemized list of such fees to consumers, on information and belief, Defendant ETC is charging consumers a "delivery fee" of unknown amount for the delivery of tickets using Flash Seats.  For example, below is a screenshot showing that for an $85 dollar ticket delivered via Flash Seats for a hockey match in Los Angeles, a consumer would be charged a total of "$120.45 which includes tickets, service, and *delivery fees*" (emphasis supplied).



83.    ETC does not have Plaintiff's permission or consent to use either trademark, much less charge a delivery fee for each such transaction.  ETC does not have Plaintiff's permission or consent to use Flash Seats and does not have permission to charge a fee for ETC's purported "delivery."  ETC uses Flash Seats because it is the name AXS has used for its safe and secure electronic ticket delivery

SECOND AMENDED VERIFIED COMPLAINT            Case No. 2:24-CV-00377-SPG (Ex)

1    service.  ETC's use of the name Flash Seats (and charging a delivery fee) makes it

2    appear as though ETC itself is the entity responsible for the safe and secure delivery

3    of the purchased tickets.  Such representations are false.

4         84.    Even *if* a genuine AXS ticket is sold on the ETC website, ETC would

5    not be responsible for the electronic delivery of that ticket in any way, shape, or form.

6    Instead, the consumer who purchased the ticket off of the ETC website would get an

7    email from AXS instructing the consumer to download the AXS App so that the ticket

8    could be delivered safely and securely.

9         85.    ETC's use of Plaintiff's trademarks is likely to cause confusion,

10   deception, and mistake that will be exceedingly harmful to Plaintiff.  For starters,

11   charging a "delivery fee" for the supposed "Flash Seats" delivery method makes it

12   look like Plaintiff approves, sponsors, or otherwise endorses ETC and its commercial

13   activity.  But Plaintiff does not approve, sponsor, other otherwise endorse ETC.  In

14   fact, Plaintiff wants nothing to do with ETC because ETC has a horrible reputation

15   in the digital ticket sale and delivery industry.

16        86.    For example, ETC and its eventticketscenter.com website have

17   hundreds of negative reviews on the BBB website, resulting in a total rating of 1.15

18   out of 5 stars.  Attached hereto as **Exhibit O** is a true and correct copy of the BBB

19   listing for ETC, showing that it has numerous reviews calling the website a "Scam"

20   and noting its "fraudulent" activity.  Below are just some of the negative reviews:



Travis W                                                06/19/2023

Def scam I would never recommend any one buying tickets from here. They charge you double then
also charge you $9.99 delivery fee for digital tickets and $20 in taxes and $50 in processing fees. I was
def scammed when purchasing these tickets. Shame on me for not checking more into other places in
pricing before purchasing. I will make sure never to purchase tickets from here again. I wish I would of
looked at these rating before buying.



Matthew C                                               07/03/2023

This is a scam. They charged me $42 for a $14 ticket (direct from the venue), and finally offered me a
$6.30 refund. You search for tickets, they place ads at the top of the search results. If you are in a hurry,
they make it appear as if you are dealing directly with the event promoter. Really fraudulent.

SECOND AMENDED VERIFIED COMPLAINT              Case No. 2:24-CV-00377-SPG (Ex)

87.    Defendant ETC's conduct is causing and is likely to cause significant damages and harm to Plaintiff's reputation.  It is causing and is likely to cause significant harm to consumers as well.

**D.    Defendant Tanriverdi is Selling and Distributing Counterfeit AXS Tickets in this Judicial District**

88.    For its part, amosa.app, Defendant Tanriverdi, (and any other individual(s) behind the amosa.app) are engaged in a similar scheme to create and/or sell and distribute counterfeit AXS digital tickets in this judicial district and beyond. As an initial matter, and as referenced above, amosa.app is a domain name registered through the domain name registrar, Dynadot, LLC.   "axs.amosa.app" is a "subdomain" where "axs" was added by the individual or individuals operating the amosa.app domain.  Including axs as a subdomain makes it appear to consumers that they have purchased genuine AXS tickets when, in reality, they have not.

89.    On or about March 30, 2022, a representative from the LA Clippers box office contacted AXS to inform them of a consumer who had received "fraudulent tickets" to an LA Clippers v. Utah Jazz game in Los Angeles.  The tickets appeared to be authentic AXS digital tickets; however, when the LA Clippers box office scanned the QR code, the seat numbers shown in the system did not match the seat numbers shown on the tickets.  The purchaser of the tickets was denied entry because the ticket information did not match and because the purchaser showed the QR code associated with the tickets to the box office on a website rather than in the AXS App. Below is an image of the website that hosted the counterfeit tickets, showing that it is Defendant Tanriverdi's amosa.app website:



90.    As another example, on or about November 8, 2022, a consumer was attending the LA Kings v. Minnesota Wild game at Crypto.com Arena in Los

Angeles.  The consumer purchased three tickets from a third party retail platform and received what appeared to be authentic AXS digital tickets.  However, the digital tickets did not appear in the AXS App or in the LA Kings app.  Rather the consumer received the tickets from the Defendant Tanriverdi's amosa.app platform and presented the tickets to security at Cypto.com Arena through a web-browser. The venue was unable to authenticate that the consumer was the rightful owner of the tickets.  Below is an image of the consumer's phone, showing the counterfeit tickets, which look exactly like authentic AXS digital tickets.  The second image on the right is a close up of that same phone photograph showing that the tickets were delivered and presented through a domain entitled axs.amosa.app:

 

91.    Like with the other Defendants, it is not exactly clear how Defendant Tanriverdi is creating counterfeit tickets.  As with the other Defendants, though, AXS's Chief Technology Officer believes that one or more individuals associated with amosa.app have: (i) downloaded the AXS App or an AXS SDK; (ii) bypassed security and access control measures to decompile, reverse engineer, disassemble or otherwise modify the AXS App or AXS SDK ████████████████████

1  ███████████████  create lookalike websites; and then (iii) created and delivered
2  counterfeit digital tickets that look like authentic AXS Mobile ID tickets to
3  unsuspecting purchasers.

4      92.    Not only do these acts constitute willful and malicious acts of
5  infringement and violations of the Digital Millennium Copyright Act, they are also
6  in direct contravention of the Terms of Service for the AXS App that Defendant
7  Tanriverdi or other amosa.app personnel would have assented to before they
8  downloaded the AXS App.

9      93.    Defendant Tanriverdi's delivery of counterfeit tickets and use of
10  Plaintiff's trademarks is likely to cause confusion, deception, and mistake that will
11  be exceedingly harmful to Plaintiff. The counterfeit tickets are nearly
12  indistinguishable from genuine AXS tickets and consumers are likely to believe that
13  amosa.app is associated with, sponsored by, or affiliated with AXS and Amosa's use
14  of the AXS Marks in its subdomain "axs.amosa.app" makes it look like Plaintiff
15  approves, sponsors, or otherwise endorses amosa.app and its commercial activity.
16  Plaintiff does not approve, sponsor, or otherwise endorse Defendant Tanriverdi, his
17  conduct, or the amosa.app domain.

18      94.    These illicit acts are causing and are likely to cause significant damages
19  and harm to Plaintiff's reputation. They are also causing and are likely to cause
20  significant harm to consumers as well.

21  **E.    Secure.Tickets is Selling and Distributing Counterfeit AXS**
22          **Tickets in this Judicial District**

23      95.    Defendant Secure.Tickets is engaged in a scheme to create and/or sell
24  and distribute counterfeit AXS digital tickets in this judicial district.

25      96.    On or about October 19, 2023, a consumer attending the Denver
26  Nuggets v. LA Clippers game at Crypto.com Arena in Los Angeles presented what
27  appeared to be an AXS digital ticket to representatives at the box office when entering
28  the Arena. However, the digital ticket did not appear in the AXS App. Rather, the

SECOND AMENDED VERIFIED COMPLAINT        Case No. 2:24-CV-00377-SPG (Ex)

consumer presented the ticket through a web-browser associated with the domain name secure.tickets.  The digital ticket had the elements of a genuine AXS digital ticket, including the trademark AXS Mobile ID, the AXS watermark, and the deep purple backdrop.  The ticket even had a rotating QR code, although it showed a different seat location and amount when scanned by representatives at the box office. Below is an image of the consumer's phone screen, showing the counterfeit ticket, and a close up of the same phone screen showing that the ticket was delivered and presented through the domain name associated with Defendant Secure.Tickets:




97.    As with the other Defendants, it is not exactly clear how Secure.Tickets is creating counterfeit tickets.  AXS's Chief Technology Officer believes that one or more individuals associated with Secure.Tickets have: (i) downloaded the AXS App; (ii) bypassed security and access control measures to decompile, reverse engineer, disassemble or otherwise modify the AXS App or AXS SDK ████████████████ ████████████████ create lookalike websites; and then (iii) created and delivered counterfeit digital tickets that look like authentic AXS Mobile ID tickets to unsuspecting purchasers.

98.    Not only do these acts constitute willful and malicious acts of infringement and violations of the Digital Millennium Copyright Act, they are also in direct contravention of the Terms of Service for the AXS App that Secure.Tickets personnel would have assented to before they downloaded the AXS App.

99.    Secure.Tickets's delivery of counterfeit tickets and use of Plaintiff's trademarks is likely to cause confusion, deception, and mistake that will be exceedingly harmful to Plaintiff.  The counterfeit tickets are nearly indistinguishable from genuine AXS tickets and consumers are likely to believe that Secure.Tickets is associated with, sponsored by, or affiliated with AXS.  Plaintiff does not approve, sponsor, or otherwise endorse Secure.Tickets.

100.    These illicit acts are causing and are likely to cause significant damages and harm to Plaintiff's reputation.  They are also causing and are likely to cause significant harm to consumers as well.

## VII.   CAUSES OF ACTION

### First Cause of Action (All Defendants)

### Copyright Infringement Under 17 U.S.C. § 101, *et seq.*

101.    Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

102.    Plaintiff's AXS App, including its source code and user interface and all protectable screen displays generated by the source code including digital tickets, constitutes an original work of authorship and copyrightable subjected matter under the laws of the United States.

103.    Plaintiff's Copyright Registration No. TX0009296416, relating to the iOS version of the AXS App, is valid and in full force and effect.

104.    Plaintiff's Copyright Registration No. TX0009300435, relating to the Android version of the AXS App, is valid and in full force and effect.

105.    Plaintiff is the owner of all exclusive rights in and to the AXS App Copyrights and the Copyright Registrations are *prima facie* evidence of validity.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

106.  On information and belief, Defendants have downloaded or accessed the AXS App and bypassed security and access control measures ███████████ ██████████████████████████████████████████████████████ ██████████████████, to decompile, reverse engineer, disassemble or otherwise modify and copy data stored or transmitted by the AXS App to create lookalike websites.

107.  On information and belief, Defendants are aware of third parties using their websites and services to market, sell, and/or distribute counterfeit tickets to consumers.

108.  On information and belief, Defendants have control over third parties who use their websites and services, including the ability to prohibit third parties from using their websites and services to market, sell, and/or distribute counterfeit tickets.

109.  On information and belief, Defendants have a direct financial interest in and derive profits from the marketing, sale, and/or distribution of counterfeit tickets, as set forth above.

110.  On information and belief, Defendant encourage the use of their websites and services to market, sale, and/or distribute counterfeit tickets or have chosen to remain willfully ignorant of the marketing, sale, and/or distribution of counterfeit tickets through their websites and services.

111.  Defendants have copied, created derivative works of, and/or distributed copies to consumers, and publicly displayed Plaintiff's protected works, all without Plaintiff's authority or consent.

112.  On information and belief, Defendants' actions were and are intentional, willful, wanton, and/or performed in complete disregard of Plaintiff's rights.

113.  These actions constitute infringement of Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

114.   Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.   Plaintiff has no adequate remedy at law for this wrongful conduct because Plaintiff's copyrights in the AXS App are unique and valuable property without a readily determinable market value.  Thus, continued and repeated infringement harms Plaintiff such that Plaintiff cannot be made whole with a monetary award, and this wrongful conduct, and the consequential damages to Plaintiff, is continuing.

115.   Plaintiff has been and will continue to be damaged by the wrongful infringement of Plaintiff's copyrights, and Defendants have been and continue to be unjustly enriched in an amount to be proven at trial.

116.   Plaintiff is entitled to recover all available damages authorized under the Copyright Act.

### Second Cause of Action (All Defendants)

### Violation of Digital Millennium Copyright Act Under 17 U.S.C. § 1201

117.   Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

118.   Plaintiff's AXS App, including its source code and user interface and all screen displays generated by the source code including digital tickets, constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.  The AXS App is covered by Copyright Registration No. TX0009296416 and Copyright Registration No. TX0009300435.

119.   Plaintiff employs technological security measures and other access controls to protect and control access to and restrict use of copyrighted protected elements of the AXS App.

120.   On information and belief, Defendants circumvented or bypassed Plaintiff's access controls to knowingly and intentionally gain unauthorized access to copyright protected elements of the AXS App to decompile, reverse engineer, disassemble or otherwise modify and copy data stored or transmitted by the AXS

SECOND AMENDED VERIFIED COMPLAINT              Case No. 2:24-CV-00377-SPG (Ex)

App. On information and belief, Defendants used the information obtained through this circumvention to create, offer for sale, sell, display, and/or distribute counterfeit AXS tickets.

121. The circumvention of the technological security and access control measures Plaintiff uses to control access to a work or works protected by copyright is in violation of 17 U.S.C. § 1201(a)(1) of the Digital Millennium Copyright Act.

122. Plaintiff has been and will continue to be damaged by Defendants' conduct in an amount to be proven at trial.

123. Plaintiff is entitled to the relief provided by 17 U.S.C. § 1203, including but not limited to injunctive relief, actual, and/or statutory damages, and attorneys' fees.

124. This improper conduct as will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court. Plaintiff is entitled to preliminary and permanent injunctive relief and Plaintiff's remedies at law are inadequate to compensate for this harm.

### Third Cause of Action (All Defendants)

### Trademark Counterfeiting Under 15 U.S.C. § 1114, *et seq.*

125. Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

126. Plaintiff owns the AXS Registrations covering the AXS Marks, which are valid and in full force and effect. Plaintiff is the owner of all rights, title, and interests in the AXS Registrations.

127. Without Plaintiff's authorization or consent, Defendants have used the AXS Marks in U.S. commerce to market, promote, offer for sale, sell and distribute counterfeit AXS tickets. Defendants intentionally reproduced, copied, and/or colorably imitated the AXS Marks and/or used designations that are identical to, or substantially indistinguishable from the AXS Marks on or in connection with the counterfeit tickets.

SECOND AMENDED VERIFIED COMPLAINT          Case No. 2:24-CV-00377-SPG (Ex)

128.   Defendants have advertised, promoted, offered for sale, sold, displayed and/or distributed counterfeit AXS tickets to consumers in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the AXS Marks through their participation in such activities.

129.   Defendants' unauthorized use of the AXS Marks is likely to cause confusion, deception or mistake in the marketplace because consumers are likely to believe there is a connection, affiliation, or sponsorship between Plaintiff and Defendants.  Defendants' actions constitute willful counterfeiting of the AXS Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

130.   As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendants will continue to unfairly acquire income, profits, and goodwill.

131.   Defendants' conduct will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court.  Plaintiff is entitled to preliminary and permanent injunctive relief and Plaintiff's remedies at law are inadequate to compensate for this harm.

**Fourth Cause of Action (All Defendants)**

**Trademark Infringement Under 15 U.S.C. § 1114, *et seq.***

132.   Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

133.   Plaintiff owns the AXS Registrations covering the AXS Marks, which are valid and in full force and effect.  Plaintiff is the owner of all right, title, and interest in and to the AXS Registrations.

134.   Defendants have used the AXS Marks in U.S. commerce to market, promote, offer for sale, sell, and distribute tickets.  Defendants' unauthorized use of the AXS Marks is likely to cause confusion, deception or mistake in the marketplace because consumers are likely to believe there is a connection, affiliation, or sponsorship between Plaintiff and Defendants.

135. Defendants' conduct constitutes infringement of Plaintiff's AXS Registrations in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

136. On information and belief, Defendants' conduct has been willful and in bad faith and Defendants have used the AXS Marks with the intention of misleading, deceiving, or confusing consumers as to the origin of their goods and for the purpose of trading on Plaintiff's reputation and goodwill.

137. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendants will continue to unfairly acquire income, profits, and goodwill.

138. Defendants' conduct will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court. Plaintiff is entitled to preliminary and permanent injunctive relief and Plaintiff's remedies at law are inadequate to compensate for this harm.

### Fifth Cause of Action (All Defendants)
### Unfair Competition and False Designation of Origin
### Under 15 U.S.C. § 1125, *et seq.*

139. Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

140. Plaintiff has adopted and used the AXS Marks in U.S. commerce, which consumers have come to associate exclusively with Plaintiff. Plaintiff is the owner of all right, title, and interest in and to the AXS Marks. The AXS Marks are non-functional.

141. Defendants have used the AXS Marks in U.S. commerce to market, promote, offer for sale, sell and distribute tickets. Defendants' unauthorized use of the AXS Marks is likely to cause confusion, deception or mistake in the marketplace because consumers are likely to believe there is a connection, affiliation, or sponsorship between Plaintiff and Defendants.

1    142.   Defendants' conduct constitutes federal unfair competition and false

2    designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C.

3    § 1125(a).

4    143.   On information and belief, Defendants' conduct has been willful and in

5    bad faith and Defendants have used the AXS Marks with the intention of misleading,

6    deceiving, or confusing consumers as to the origin of their goods and for the purpose

7    of trading on Plaintiff's reputation and goodwill.

8    144.   As a direct and proximate cause of Defendants' conduct, Plaintiff has

9    suffered and will continue to suffer loss of income, profits, and goodwill, and

10   Defendants will continue to unfairly acquire income, profits, and goodwill.

11   145.   Defendants' conduct will cause further irreparable injury to Plaintiff if

12   Defendants are not restrained by this Court.  Plaintiff is entitled to preliminary and

13   permanent injunctive relief and Plaintiff's remedies at law are inadequate to

14   compensate for this harm.

15              **Sixth Cause of Action (All Defendants)**

16              **State Statutory Unfair Competition**

17              **Under Cal. Bus. & Prof. Code § 17200, *et seq.***

18   146.   Plaintiff re-alleges and incorporates all of the allegations set forth in the

19   preceding paragraphs as if fully set forth herein.

20   147.   Plaintiff has adopted and used the AXS Marks in U.S. commerce, which

21   consumers have come to associate exclusively with Plaintiff.  Plaintiff is the owner

22   of all rights, title, and interest in the AXS Marks. The AXS Marks are non-functional.

23   148.   On information and belief, Defendants have intentionally appropriated

24   the AXS Marks with the intent of causing confusion, mistake, and deception as to the

25   source of their goods and services with the intent to pass off their goods and services

26   as those of Plaintiff.

27

28

SECOND AMENDED VERIFIED COMPLAINT        Case No. 2:24-CV-00377-SPG (Ex)

149.   Defendants' conduct in connection with the offer for sale, sale, and advertisement of tickets has violated the unfair competition laws of the State of California, specifically Cal. Bus. & Prof. Code § 17200 *et seq*.

150.   On information and belief, Defendants' conduct is willful, intentional, malicious, and in bad faith.

151.   As a direct and proximate cause of Defendants' conduct, Plaintiff has been and will continue to be irreparably harmed and damaged.  Plaintiff's remedies at law are inadequate to compensate for this harm.

**Seventh Cause of Action (All Defendants)**

**Common Law False Designation of Origin & Unfair Competition**

152.   Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

153.   Plaintiff has adopted and used the AXS Marks in U.S. commerce, which consumers have come to associate exclusively with Plaintiff.  Plaintiff is the owner of all rights, title, and interest in the AXS Marks.

154.   Defendants are promoting, advertising, selling, and distributing goods and services under the AXS Marks, in violation of California's common law of unfair competition.

155.   Defendants' unauthorized use of the AXS Marks for goods and services competing with Plaintiff's goods and services is likely to cause confusion, deception, or mistake in the marketplace as to the source or sponsorship of Defendants goods and services.

156.   On information and belief, Defendants' conduct is willful, intentional, malicious, and in bad faith.

157.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer irreparable loss of income, profits, and good will, and Defendants will continue to unfairly acquire income, profits, and goodwill.  As a direct and proximate cause of Defendants' conduct, Plaintiff has been and will

continue to be irreparably harmed and damaged. Plaintiff's remedies at law are inadequate to compensate for this harm.

158.    Defendants' conduct will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights.

## Eighth Cause of Action

## (Against Defendants ETC, TNI and VBD)

## Civil Conspiracy

159.    Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

160.    Plaintiff alleges that Defendants ETC and VBD formed a plan to promote, offer for sale, sell, display, and distribute counterfeit tickets using the AXS Marks and protected elements of the AXS App.

161.    On information and belief, Defendants ETC and VBD agreed to the plan and were aware that each other planned to participate in the plan and that the plan was unlawful and fraudulent.

162.    Plaintiff alleges that Defendants ETC and TNI formed a plan to promote, offer for sale, sell, display, and distribute counterfeit tickets using the AXS Marks and protected elements of the AXS App, including a plan for ETC to promote, offer for sale, sell, display, and distribute counterfeit tickets using TNI's software.

163.    On information and belief, Defendants ETC and TNI agreed to the plan and were aware that each other planned to participate in the plan and that the plan was unlawful and fraudulent.

164.    As a result of this conspiracy, Plaintiff has been harmed because, among other things, Defendants have derived sales, revenues, and other benefits from their promotion, offering for sale, selling, display and distribution of counterfeit tickets, all at Plaintiff's economic and reputational expense.

165.    On information and belief, Defendants' conduct is willful, intentional, malicious, and in bad faith.

SECOND AMENDED VERIFIED COMPLAINT          Case No. 2:24-CV-00377-SPG (Ex)

166.   Defendants' conduct will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights.

## Ninth Cause of Action (All Defendants)

## Breach of Contract

167.   Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

168.   Plaintiff's Terms of Use is a valid and enforceable contract.   On information and belief, Defendants used the AXS Platform and/or downloaded the AXS App.

169.   Plaintiff's Terms of Use provide notice that Plaintiff's "Mobile App is protected by copyright" and that it or its contents "may not be sold, redistributed, copied, made available to the public, or part of a derivative work created by you without the express written consent of AXS" and that users "may not attempt to decompile, reverse engineer, disassemble or otherwise modify the Mobile App, or in any way compromise the security of data stores or transmitted by [AXS's] Mobile App."

170.   Defendants agreed to Plaintiff's Terms of Use by using the AXS Platform and/or using, accessing, or downloading the AXS App.

171.   Defendants have breached the Terms of Use by copying, mimicking, emulating, creating derivative works of, distributing copies to consumers, and publicly displaying Plaintiff's protected works, all without Plaintiff's authority or consent.

172.   Defendants have breached the Terms of Use by circumventing or bypassing Plaintiff's access controls to knowingly and intentionally gain unauthorized access to copyright protected elements of the AXS App in order to decompile, reverse engineer, disassemble or otherwise modify and copy protected elements of the AXS App.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

173.  Plaintiff's Terms of Use also provides notice that "the trademarks, logos, and service marks displayed on the Services (collectively the "Trademarks") are registered and unregistered trademarks owned by [AXS] or by our licensors, service providers and or others that may have granted us permission to use such Trademarks" and that users "may not use the Trademarks in connection with any products or service that is not offered by [AXS], and users are not granted any license or right to use the Trademarks for commercial or any unauthorized purposes."

174.  Defendants have breached the Terms of Use by using the AXS Marks in U.S. commerce to market, promote, offer for sale, sell and distribute counterfeit tickets without Plaintiff's authorization or consent. Defendants intentionally reproduced, copied, and/or colorably imitated the AXS Marks and/or used designations that are identical to, or substantially indistinguishable from the AXS Marks on or in connection with the counterfeit tickets.

175.  On information and belief, Defendants' conduct is willful, intentional, malicious, and in bad faith.

176.  As a result of Defendants' breach, Plaintiff has suffered and continues to suffer monetary and non-monetary injury and harm in an amount to be proven at trial.

177.  As a result of Defendants' ongoing breach, Plaintiff has been injured and faces irreparable harm. Plaintiff is threatened with losing its competitive advantage, customers, and goodwill that would be impossible to fully compensate unless Defendants are enjoined and restrained by order of this Court.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and relief against Defendants and respectfully requests that this Court:

1.  Preliminarily and then permanently enjoin, restrain, and forbid Defendants, their officers, agents, servants, employees, attorneys, successors or

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

assigns, and all persons or entities acting in concert or participation with any of them from:

> (a) copying, mimicking, emulating, creating derivative works from, distributing copies of, offering for sale and/or publicly displaying any tickets or other products that incorporate any portion of AXS's copyright protected works;

> (b) imitating, copying, duplicating or otherwise making any use of the AXS Marks, or any mark confusingly similar to the AXS Marks in any manner;

> (c) using any false designation or origin or false description or representation or any other thing calculated or likely to cause confusion, mistake, or deception in the marketplace as to the source of Defendants' goods and services or any belief that Defendants' goods and services are in any way associated with, affiliated with, or related to AXS or AXS's goods and services;

> (d) engaging in any activity constituting unfair competition with AXS or with AXS's rights in, or to use, the AXS Marks;

> (e) further using the AXS Marks, or confusingly similar variations thereof, in or as a part of any advertising, marketing and/or media material, web page text, social media platform, domain name, email, or other communication;

> (f) accessing, decompiling, reverse engineering, disassembling or otherwise modifying the AXS App;

> (g) assisting, aiding or abetting another person, entity, or business in engaging in or performing any of the activities enumerated above.

2.      Direct Defendants to file with the Court and serve on counsel for AXS, within thirty days after entry of any injunction issued by this Court, a sworn statement as provided in 15 U.S.C. § 1116;

3.      Award AXS a money judgment, granting compensatory relief for Defendants' willful copyright infringement, the precise amount to be proven at trial.

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-CV-00377-SPG (Ex)

4.     Award AXS a money judgment, granting compensatory relief for Defendants' willful violations of the Digital Millennium Copyright Act, including either actual damages, or statutory damages as provided for pursuant to 17 U.S.C. § 1203.

5.     Award AXS a money judgment, granting compensatory relief for Defendants' willful trademark counterfeiting, the precise amount to be proven at trial, or in the alternative, statutory damages as permitted by 15 U.S.C. § 1117(c), against each Defendant in an amount of $2,000,000 per counterfeit mark per type of goods or services sold;

6.     Direct Defendants to account to AXS for its profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a);

7.     Award AXS its actual damages incurred as a consequence of Defendants' conduct as described herein, pursuant to 15 U.S.C. § 1117(a), 15 U.S.C. § 1125(a), and California law;

8.     Award AXS its reasonable attorneys' fees and taxable costs and disbursements of this action, pursuant to the Lanham Act, the Copyright Act, and the inherent authority of the Court;

9.     Award AXS trebled damages as provided for under the Lanham Act;

10.     An order finding that Defendants ETC, TNI, and VBD engaged in a conspiracy and are jointly and severally liable for any and all remedies granted by this Court;

11.     Award AXS prejudgment interest at the rate provided for under California law as applicable; and

12.     Award AXS such other and further relief as the Court deems just and equitable.

///

///

///

-43-

## IX.    JURY DEMAND

AXS demands that all claims or causes of action raised in this Complaint be tried to a jury to the fullest extent possible under the United States Constitution.

Dated:    October 30, 2024                DORSEY & WHITNEY LLP


                                          By: */s/ J. Michael Keyes*
                                          J. Michael Keyes (SBN 262281)
                                            keyes.mike@dorsey.com
                                          Connor J. Hansen (*pro hac vice*)
                                            hansen.connor@dorsey.com
                                          Columbia Center
                                          701 Fifth Avenue, Suite 6100
                                          Seattle, WA
                                          Telephone:  206.903.8800
                                          Facsimile:   206.903.8820

                                          DORSEY & WHITNEY LLP
                                          Kent J. Schmidt (SBN 195969)
                                            *schmidt.kent@dorsey.com*
                                          600 Anton Boulevard, Suite 200
                                          Costa Mesa, CA 92626
                                          Telephone:  714.800.1400
                                          Facsimile:  714.800.1499

                                          *Attorneys for Plaintiff AXS Group LLC*

SECOND AMENDED VERIFIED COMPLAINT                Case No. 2:24-CV-00377-SPG (Ex)

1

## **VERIFICATION**

2

I, Alex Hazboun, declare as follows:

3      1.      I am the Chief Technology Officer for Plaintiff AXS Group LLC
4  ("AXS").  I have reviewed the foregoing Verified Complaint and verify that the
5  statements made therein are true and correct to the best of my knowledge,
6  information, and belief.

7      2.      I have personal knowledge of AXS, AXS's activities, AXS's copyright
8  and trademark rights, and AXS's interactions with Defendants, including those set
9  forth out in the foregoing Verified Complaint, and if called to testify, I would testify
10  as to the matters stated therein.

11      3.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under
12  the laws of the United States that the foregoing factual statements in the Verified
13  Complaint about myself, AXS, AXS's activities, AXS's copyright and trademark
14  rights, and AXS's interactions with Defendants are true and correct factual
15  statements.

16

17      Executed on _Oct. 29ᵗʰ_ 2024 in Los Angeles, California.

18

19                                                _Alex Hazboun_
20                                                Alex Hazboun

21

22

23

24

25

26

27

28

SECOND AMENDED VERIFIED COMPLAINT                    Case No. 2:24-cv-00377-SPG-(Ex)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 9, 2024, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record.  Any counsel of record who has not consented to electronic service through the Court's CM/ECF system will be served by electronic mail.

            */s/ J. Michael Keyes*
            J. Michael Keyes, SBN 262281